United States District Court
Southern District of Texas
**ENTERED**
June 08, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN T. MORRIS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-3456 |
| | § | |
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This is a redistricting case. The plaintiff, John T. Morris ("Morris"), is proceeding *pro se* and has sued the State of Texas ("Texas"), Texas Governor Greg Abbott ("Gov. Abbott") in his official capacity, and Texas Secretary of State Ruth Ruggero Hughs ("Hughs") in her official capacity under 42 U.S.C. § 1983 ("Section 1983"). (Dkt. 4 at p. 2). The defendants have moved for dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In response to the defendants' motion, Morris has moved for leave to amend his complaint.

Morris's motion for leave to amend his complaint (Dkt. 18) is **DENIED**. Defendants' motion to dismiss under Rule 12(b)(1) (Dkt. 10) is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Morris has amended his complaint once as a matter of course. According to his live complaint, Morris lives in and is registered to vote in Texas's 2nd congressional district. (Dkt. 4 at p. 3). Morris challenges the legality of Texas's "new congressional map, SB 6,

[which] has altered the plaintiff's 2nd Congressional District drastically." (Dkt. 4 at p. 3). Morris contends that "[d]ue to the manner in which the 2nd district is politically gerrymandered it does not even nominally conform to recognized Supreme Court redistricting criteria." (Dkt. 4 at p. 4).

Morris is suing Texas, Gov. Abbott, and Hughs under Section 1983 for violations of the First and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 2 of the United States Constitution. (Dkt. 4 at pp. 2, 5–6). Specifically, Morris seeks the following relief:

> The plaintiff asks the Court to intervene in the redistricting process and prevent the the [sic] Texas legislature and governor from changing the plaintiff's district boundaries as little as possible and only to the extent necessary to accommodate the two new districts apportioned to the state of Texas in accordance with the 2020 census. And in so doing prevent the Republican controlled government of Texas from undermining the original purpose of Article I, Section 2, Clause 1 of the U.S. Constitution requiring frequent elections and in effect abridging the plaintiff's right to an effective political voice in respect to his representative's candidacy for a new term in the U.S. House of Representatives. And require the state to ensure that the voter's First Amendment right to factual information separate from opinion is provided by the media.
> Dkt. 4 at p. 5.

Defendants have filed a motion to dismiss Morris's live complaint for lack of subject matter jurisdiction under Rule 12(b)(1). (Dkt. 10). In their motion, Defendants argue that: (1) Morris's partisan gerrymandering claims present political questions beyond the reach of the federal courts; (2) the federal courts lack jurisdiction to compel Texas to enact new legislation and accordingly lack jurisdiction over Morris's request that the Court "require the state to ensure that the voter's First Amendment right to factual information separate

from opinion is provided by the media[;]" and (3) Morris's claims are barred by sovereign immunity. (Dkt. 10 at pp. 7–9).

Morris has not filed a response that addresses Defendants' arguments; instead, he has moved for leave to amend his complaint. However, Morris's proposed amended complaint does not cure the jurisdictional deficiencies identified by Defendants in their motion and instead simply uses slightly more benign language—such as substituting the phrase "redistricting due to reapportionment" for the phrases "politically gerrymandered" or "[p]artisan gerrymandering"—to assert the same claims. (Dkt. 4 at pp. 3–4; Dkt. 18-1 at p. 4). In their response to Morris's motion for leave to amend, Defendants argue that leave to amend should be denied as futile and that Morris's case should be dismissed for the reasons given in their motion to dismiss. (Dkt. 23).

## II. LEGAL STANDARDS

### a. Rule 12(b)(1)

A motion filed under Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting that federal subject matter jurisdiction exists bears the burden of proving it by a preponderance of the evidence. *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Under Rule 12(b)(1), the court may consider any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Walch v. Adjutant General's Department of Texas*, 533 F.3d 289, 293 (5th Cir. 2008). "A

case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi*, 143 F.3d 1006, 1010 (5th Cir. 1998).

### b. Rule 15

Federal Rule of Civil Procedure 15 allows a party to amend its pleading once as a matter of course within certain time periods. Fed. R. Civ. P. 15(a)(1). After a party has amended its pleading once as a matter of course, it "may amend its pleading [again] only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *see also Harrison v. Aztec Well Servicing Co.*, No. 1:20-CV-38, 2020 WL 5514129, at *2 (N.D. Tex. Sept. 14, 2020).

Although Rule 15(a)(2) provides that courts "should freely give leave when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), leave to amend "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quotation marks omitted). A district court may deny leave to amend "for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *Simmons v. Sabine River Authority Louisiana*, 732 F.3d 469, 478 (5th Cir. 2013). If a proposed amended complaint could not survive a motion to dismiss, leave to amend may be denied on the basis of futility. *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003); *see also Lewis v. Fresne*, 252 F.3d 352, 360 n.7 (5th Cir. 2001) ("Leave to amend does not need to be granted when the amended complaint would not withstand a motion to dismiss for failure to state a claim.").

## III. ANALYSIS

As previously mentioned, Morris's live complaint is materially identical to his proposed amended complaint. Neither complaint states claims over which the Court has subject matter jurisdiction. Accordingly, the Court will deny Morris's request for leave to amend his complaint on the basis of futility and dismiss this case without prejudice for lack of subject matter jurisdiction. The Court will analyze those issues in reverse order.

### a. Subject matter jurisdiction

Although he sets out four counts in his live complaint, Morris essentially brings two claims: (1) he challenges the way in which his congressional district was redrawn by SB 6 (Counts I, II, and III); and (2) he asks the Court to "require [Texas] to ensure that the voter's First Amendment right to factual information separate from opinion is provided by the media" (Count IV). (Dkt. 4 at pp. 3–6). The Court lacks subject matter jurisdiction over these claims.

#### i. Morris's claims are foreclosed by Supreme Court and Fifth Circuit precedent.

The Court lacks subject matter jurisdiction over Counts I, II, and III because they are partisan gerrymandering claims. As Defendants correctly point out, the Supreme Court recently held that "partisan gerrymandering claims present political questions beyond the reach of the federal courts." *Rucho v. Common Cause*, 139 S.Ct. 2484, 2506–07 (2019).

In *Rucho*, the Supreme Court clarified that "[i]n two areas—one-person, one-vote and racial gerrymandering—[its] cases have held that there is a role for the courts with

respect to at least some issues that could arise from a State's drawing of congressional districts." *Id*. at 2495–96. Morris does not allege that his district was racially gerrymandered; and he does not allege a violation of the "one-person, one-vote" principle as the Supreme Court has defined it, meaning that he does not allege that SB 6 diluted votes by creating congressional districts with significantly different populations. *See id.* at 2501 ("'[V]ote dilution' in the one-person, one-vote cases refers to the idea that each vote must carry equal weight. In other words, each representative must be accountable to (approximately) the same number of constituents."). Rather, Morris's complaint is simply that the electoral makeup of his redrawn congressional district now includes many people who were not formerly constituents of the incumbent representative, theoretically reducing the extent to which the next congressional election can hinge on an informed appraisal of the incumbent representative's past performance. (Dkt. 4 at p. 4). Morris argues that his "knowledge and experience with the [incumbent] candidate is now swamped out and now part of a minority since large areas have been added to the district with voters who have had only nominal interest in the incumbent representative in the past." (Dkt. 4 at p. 4). Such a complaint, under *Rucho*, falls outside of the realm of possible federal judicial relief; the Supreme Court explained in its opinion that the questions presented by an argument like Morris's remain inescapably political. *Id*. at 2500 ("[P]erhaps fairness should be measured by adherence to 'traditional' districting criteria, such as maintaining political subdivisions, keeping communities of interest together, and protecting incumbents. But . . . traditional criteria such as compactness and contiguity cannot promise political neutrality when used as the basis for relief. Instead, it seems, a decision under these standards would unavoidably

have significant political effect, whether intended or not.") (citation and quotation marks omitted).

In Count IV, Morris asks the Court to "require [Texas] to ensure that the voter's First Amendment right to factual information separate from opinion is provided by the media." (Dkt. 4 at pp. 3–6). The Court lacks subject matter jurisdiction over this count because Morris is asking the Court to order Defendants to pass legislation, issue executive orders, or take some other action to regulate media coverage of elections. Leaving aside the many other reasons why a request that a court require a state to censor the media's election coverage is problematic, it suffices here to say that the Court lacks the power under these circumstances[1] "to dictate to legislative bodies or executives what laws and regulations they must promulgate." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469–70 (5th Cir. 2020) ("[A] court cannot compel the Governor to issue orders as a means of redressing claims under the Voting Rights Act or the Constitution.").

### ii. *Morris's claims are barred by sovereign immunity.*

The Court lacks subject matter jurisdiction over Morris's claims for the additional reason that Morris's claims are barred by sovereign immunity. Under the Eleventh Amendment, absent waiver or express Congressional abrogation of sovereign immunity,

---

[1] The Ninth Circuit has stated in dicta that "federal courts have jurisdiction to order a remedy requiring the enactment of legislation in certain narrow circumstances, such as where fundamental rights are at stake." *M.S. v. Brown*, 902 F.3d 1076, 1087 (9th Cir. 2018). Noting this dicta in *Brown*, the Fifth Circuit has specifically reserved the questions of "whether there might be such narrow circumstances and if so, what they might be." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 470 (5th Cir. 2020). Even assuming that the Fifth Circuit would agree with the Ninth Circuit, Morris does not have a "fundamental right" to control the media's election coverage.

neither a state nor agencies acting under the state's control may be subject to suit in federal court by the state's own citizens or by citizens of another state. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Ysleta del Sur Pueblo v. State of Texas*, 36 F.3d 1325, 1335 (5th Cir. 1994). Eleventh Amendment immunity is a "jurisdictional bar [that] applies regardless of the nature of the relief sought." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984).

Morris has sued Texas under Section 1983. Section 1983 does not abrogate the states' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). Moreover, there is no indication that Texas consented to be sued by Morris. Accordingly, Morris's claims against Texas are categorically barred. *Ysleta*, 36 F.3d at 1335–37.

Morris has also sued Gov. Abbott and Hughs in their official capacities under Section 1983. Under the *Ex parte Young* doctrine, a plaintiff may avoid an Eleventh Amendment bar to suit by suing an individual state official in his or her official capacity, alleging an ongoing violation of federal law, and seeking relief properly characterized as prospective. *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002); *see also Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* doctrine allows a court to issue "[a]n injunction to prevent [a state official] from doing that which he has no legal right to do[,]" and it allows a court to "direct [a state official] to perform [a] merely ministerial duty." *Ex parte Young*, 209 U.S. 123, 158–59. But it does not allow a court to "direct affirmative action" in a manner that "control[s] the exercise of the [state official's] discretion[.]" *Id.* at 158; *see also Richardson v. Texas Secretary of*

*State*, 978 F.3d 220, 242 (5th Cir. 2020) (explaining that, under the *Ex parte Young* doctrine, "a court may not compel officers to take affirmative official actions that are discretionary"). As the Supreme Court phrased it in a pre-*Young* case, "a court cannot substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter." *Hagood v. Southern*, 117 U.S. 52, 65–71 (1886) (holding that sovereign immunity barred a suit to compel a state comptroller general to levy a tax to fund redemption of revenue bond scrip because the relief sought would "require, by affirmative official action on the part of the defendants, the performance of an obligation which belongs to the state in its political capacity").

Morris's claims against Gov. Abbott and Hughs are too vague to meet the requirements of the *Ex parte Young* doctrine. Although it is clear from the pleadings that Morris wants Texas to draw new congressional maps and promulgate laws or regulations to ensure that "the media" provides "factual information separate from opinion[,]" it is not at all clear what particular official actions Morris wants Gov. Abbott and Hughs, specifically, to take or refrain from taking to remedy some ongoing violation of federal law. (Dkt. 4 at p. 5). Even if Morris could adequately plead an ongoing violation of federal law, he must request either that Gov. Abbott and Hughs be enjoined from "doing [something] which [they have] no legal right to do" or that Gov. Abbott and Hughs be compelled to perform some "merely ministerial duty." *Ex parte Young*, 209 U.S. at 158–59. Morris has done neither, and as a result he has not met his burden to show that his claims escape the reach of Eleventh Amendment immunity.

### b. Leave to amend

In response to Defendants' motion to dismiss, Morris seeks leave to amend his complaint, and he has attached a proposed amended complaint to his motion. (Dkt. 18). Morris's live complaint and proposed amended complaint are materially identical. The proposed amended complaint does not (and, given the gravamen of Morris's claims, cannot) remedy the jurisdictional deficiencies highlighted in Defendants' motion to dismiss. Accordingly, the Court will deny leave to amend on the basis of futility. *Briggs*, 331 F.3d at 508; *Lewis*, 252 F.3d at 360 n.7.

## IV.   CONCLUSION

Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) (Dkt. 10) is **GRANTED**. Plaintiff's motion for leave to amend his complaint (Dkt. 18) is **DENIED**. Any other pending motions are **DENIED AS MOOT**.

Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. The Court will issue a separate final judgment.

SIGNED at Houston, Texas, on June 8, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE